IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>GLEN JACKMAN,<br><br>    Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS<br><br><br><br>Case No. 2:06-CR-486 TS |

This matter is before the Court on Defendant's Motion to Suppress.

## I.  FINDINGS OF FACT

At approximately 3:00 a.m. on the morning of June 16, 2006, a Taylorsville City Police Department Detective (the Detective) observed a moving vehicle that had neither a front nor rear license plate.  He initiated a traffic stop.  As he neared the vehicle on foot, the Detective observed that the back window was darkly tinted.  It contained an outline of a shape that could have been a temporary license in the back window.  The Detective also noticed that he could not see in the back seat due to a similarly dark tinted window.

Defendant Glen Jackman was the driver of the vehicle and there was another individual in the passenger side.  As an officer safety precaution, the Detective immediately

requested that Defendant roll down the back window so that the Detective could observe the back seat.  When it was rolled down, the Detective observed that a third individual was in the back seat.

It is a traffic offense in the State of Utah to have an improperly displayed license plate or temporary tag.  A temporary tag must be visible and should be placed where the license plate goes.

The Detective asked Defendant for his driver's license, registration, and proof of insurance.  Defendant was unable to produce any of these documents.  The Detective then wrote down his personal information—name, date of birth (DOB), and social security number— for the purpose of trying to identify the driver.  The driver gave a false name and DOB and was unable to give his social security number.  Because this was the first time in his eight years of law enforcement work that the Detective encountered an adult who did not know their social security number, he considered it a "red flag" of suspicious behavior.  The Detective also thought that Defendant looked older than the 21 years of age he would have been had his stated DOB been correct. The Detective took the false name and DOB and ran them through Utah state driver's license records, warrants information and NCIC information and found no information—another red flag in the Detective's mind.   As a result of those circumstances he considered to be red flags, the Detective called for back up before returning to the vehicle.  When he returned to the vehicle, the Detective again asked Defendant his DOB and told him that he suspected that Defendant was lying.  Defendant admitted he was lying.  The Detective subsequently arrested Defendant based on his having given the false information.  The vehicle was searched incident to the arrest.

After the arrest, the Detective took a photograph of the back window and the temporary license. The photograph was made with a flash camera. The Court finds credible the testimony that the temporary tag is visible in the photograph because of the flash, but it was not visible to the Detective as he approached with his headlights shining on the back window.

## II.  DISCUSSION AND CONCLUSIONS OF LAW

Defendant moves to suppress evidence found in the vehicle on the ground that the Detective improperly extended the scope of the stop. Defendant contends that the flash photograph shows that the Detective was able to see the tag and determine it was valid as he walked up to the vehicle. In support, Defendant cites *McSwain v. United States*[1] and *Edgerton v. United States*.[2]

The government responds that *McSwain* and *Edgerton* are distinguishable because, unlike the tags in those cases, the temporary tag here was not visible to the officer as he walked up to the vehicle.

In *McSwain* and *Edgerton*, vehicles were pulled over in routine traffic stops for the purpose of ensuring the validity of their registrations. In *McSwain*, the officer was unable to read the expiration date as the vehicle passed him.[3] In *Edgerton*, the officer could not read the temporary tag from his patrol car because it was dark.[4] In both cases, the officer

---

[1] 29 F.3d 558, 60-61 (10th Cir. 1994).

[2] 438 F.3d 1043, 1051 (10th Cir. 2006).

[3] *McSwain*, 29 F.3d at 560.

[4] *Edgerton*, 438 F.3d at 1045.

was able to read the tags and determine that they appeared valid as the officers approached the vehicles. The Tenth Circuit held:

> The Fourth Amendment protects against unreasonable searches and seizures. "The stopping of a vehicle and the detention of its occupants constitute a 'seizure' within the meaning of the Fourth Amendment." To determine the reasonableness of such a seizure, we employ a dual inquiry: "[1] whether the officer's action was justified at its inception, and [2] whether [the action] was reasonably related in scope to the circumstances which justified the interference in the first place." The first prong of this inquiry is not at issue here because Mr. McSwain concedes the propriety of the initial stop. He argues, however, that the initially valid stop evolved into an unreasonable detention. We agree.
>
> Trooper Avery stopped Mr. McSwain for the sole purpose of ensuring the validity of the vehicle's temporary registration sticker. Once Trooper Avery approached the vehicle on foot and observed that the temporary sticker was valid and had not expired, the purpose of the stop was satisfied. Trooper Avery's further detention of the vehicle to question Mr. McSwain about his vehicle and travel itinerary and to request his license and registration exceeded the scope of the stop's underlying justification.[5]

Applying *McSwain* in *Edgerton*, the Tenth Circuit further held:

> We decline to require optimal viewing conditions before compliance with a statute requiring an otherwise unremarkable license plate to be "clearly visible" is assured. Fourth Amendment reasonableness does not depend on external conditions, but on a reasonable suspicion that a driver has violated the law. The notion that an unobscured, wholly unremarkable Colorado temporary registration tag posted in the rear window of Defendant's vehicle consistent with Colorado law was not "clearly legible" within the meaning of [the state traffic law] because "it was dark out" proves too much for us. Every temporary tag is more difficult to read in the dark when a car is traveling 70 mph on the interstate. But that does not make every vehicle displaying such a tag fair game for an extended Fourth Amendment seizure.

---

[5] *McSwain*, 29 F.3d at 561 (quoting *United States v. Walker*, 933 F.2d 812, 815 (10th Cir.1991)); *United States v. Dewitt*, 946 F.2d 1497, 1501 (10th Cir.1991) (quoting *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968)).

4

> Once Trooper Dean was able to read the Colorado tag and deem it unremarkable, any suspicion that Defendant had violated [the state traffic law] dissipated because the tag was in "in a place and position to be clearly visible." At that point, *McSwain* instructs us for better or worse that Trooper Dean, as a matter of courtesy, should have explained to Defendant the reason for the initial stop and then allowed her to continue on her way without requiring her to produce her license and registration.[6]

The Tenth Circuit distinguished these cases in two cases involving a Kansas statute that requires license plates to be clearly visible and legible. In *United States v. Ledesma*,[7] and *United States v. Poke*,[8] the Tenth Circuit found that the fact that the troopers could read the tags as they walked up the vehicles was not determinative because the tags had not been clearly visible as required by Kansas law and, therefore, the troopers still had a reasonable suspicion of a traffic violation.

In the present case, the Court agrees that *McSwain* and *Edgerton* are distinguishable. As noted above, the Court finds the Detective's testimony credible that in the light provided by his headlights, he could not read the temporary tag and that he could not see the presence of an individual in the back seat due to the dark tint on the windows. Because the Court has found that the tag was not legible to the Detective as he walked up to the vehicle, the Court finds that he "properly detained [Defendant] because he continued to have an objectively reasonable suspicion that a traffic violation was

---

[6] 438 F.3d at 1051 (citing *McSwain*, 29 F.3d at 562).

[7] 447 F.3d, 1314-15 (10th Cir. 2006).

[8] 81 Fed. Appx. 712 (10th Cir. 2003) (distinguishing *McSwain* where the trial court found that trooper could not "clearly see" the temporary tag as it traveled on the roadway due to dark window tinting as required by state law)..

occurring,"[9] namely, that the vehicle did not have a valid registration. Accordingly, the extended detention to request and check the driver's licence, proof of insurance and registration did not violate the Fourth Amendment.[10] Once the driver was unable to produce any of this documentation and the Detective was unable to verify any of the information that he did provide, the Detective had probable cause to suspect that he had provided false information and to arrest him. Accordingly, the Court finds and concludes that there was no Fourth Amendment violation.

### III.  ORDER

Based upon the foregoing, it is therefore

ORDERED that Defendant's Motion to Suppress (Docket No. 37) is DENIED. It is further

ORDERED that the time from the filing of the Motion to Suppress through the date of this Order is excluded from the computation of Speedy Trial Act time pursuant to 18 U.S.C. § 3161(h)(1)(F) and (J).

DATED  May 14, 2007.

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[9]*Id.*

[10]*United States v. Mendez*, 118 F.3d 1426, 1429 (10th Cir. 1997).